[No. B184917. Second Dist., Div. Three. Jan. 11, 2007.]

LAURA RAPPAPORT-SCOTT, Plaintiff and Appellant, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB,
Defendant and Respondent.

832

## COUNSEL

Law Offices of Kenneth L. Schreiber and Kenneth L. Schreiber for Plaintiff and Appellant.

Ford, Walker, Haggerty & Behar, Timothy L. Walker and Jay D. Brown for Defendant and Respondent.

## OPINION

**CROSKEY, Acting P. J.**—Laura Rappaport-Scott appeals a judgment dismissing her complaint against her automobile insurer, Interinsurance Exchange of the Automobile Club (Interinsurance), after the sustaining of a demurrer without leave to amend. She contends Interinsurance unreasonably and in bad faith refused her demand to settle her claim for benefits for bodily injury caused by an underinsured motorist before submitting the claim to arbitration. We conclude that the facts alleged in the complaint are insufficient to state a cause of action for breach of the implied covenant of good faith and fair dealing, and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

Interinsurance issued an automobile insurance policy to Rappaport-Scott including coverage for bodily injury caused by uninsured and underinsured motorists. Under the terms of that coverage part, Interinsurance agreed to pay all sums that the insured was "legally entitled to recover" as damages from an uninsured or underinsured motorist because of bodily injury caused by the

uninsured or underinsured motorist. The coverage limit for bodily injury caused by uninsured and underinsured motorists was $100,000 per person.

Rappaport-Scott, while driving her automobile on a city street in January 1997, was rear-ended by another vehicle that had been struck by a vehicle driven by an underinsured motorist. She suffered bodily injuries as a result of the collision. Rappaport-Scott sued the underinsured motorist and settled the action for $25,000, which was the applicable policy limit under the underinsured motorist's automobile insurance policy. Rappaport-Scott then submitted a claim to Interinsurance for benefits under her underinsured motorist coverage.

Rappaport-Scott made a demand for arbitration of her claim against Interinsurance pursuant to a policy provision required by Insurance Code section 11580.2, subdivision (f), and the parties submitted the claim to arbitration. She claimed that the total value of her injuries and losses caused by the underinsured motorist was $346,732.34, including $26,732.34 in medical expenses incurred, $20,000 in future medical expenses, $150,000 in lost income, and $150,000 in general damages. She requested an arbitration award in the amount of $75,000, calculated by deducting the $25,000 paid by the underinsured motorist from the $100,000 coverage limit. She also made what she characterizes as a "settlement demand" on Interinsurance for payment in that amount. Interinsurance offered her only $7,000 on the claim. Rappaport-Scott and Interinsurance participated in a mediation prior to the arbitration hearing, but failed to settle the claim.

At the arbitration hearing in August 2003, the parties stipulated that the policy provided coverage for the claim, that Rappaport-Scott had received some benefits under her medical expenses coverage and $25,000 from the underinsured motorist, and that she was free of fault. The parties disputed only the amount payable on the claim. The arbitrator found that Rappaport-Scott had suffered damages of $15,000 for medical expenses, $3,000 for loss of earnings, and $45,000 for pain, suffering, and future medical care, for a total of $63,000. The arbitrator reduced the total amount by $25,000 for the settlement with the underinsured motorist and $10,000 for medical expenses benefits previously paid, and awarded a net amount of $28,000. The parties corrected the $10,000 figure to reflect the actual prior payment of benefits of only $5,000, and agreed that Rappaport-Scott was entitled to $33,000 under the award.

### 2. *Trial Court Proceedings*

Rappaport-Scott filed a complaint against Interinsurance in August 2004 alleging a single count for breach of the implied covenant of good faith and

fair dealing. She alleged that while the arbitration proceedings were pending, Interinsurance was unwilling "to settle plaintiff's claims for a reasonable amount," resulting in "an unreasonable delay," and that she was entitled to recover from Interinsurance the full $100,000 policy limit. The superior court sustained a demurrer to the complaint with leave to amend. Rappaport-Scott filed a first amended complaint in February 2005, and the court again sustained a demurrer with leave to amend.

Rappaport-Scott filed a second amended complaint in April 2005 again alleging a single count for breach of the implied covenant of good faith and fair dealing. She alleged the facts described above and also alleged that Interinsurance failed to negotiate with her in good faith to resolve her claim. She alleges that Interinsurance "refused to engage in settlement discussions [with her] and/or present a reasonable counteroffer" to her demand for $75,000.

Interinsurance demurred to the second complaint, arguing that Rappaport-Scott had failed to allege facts to establish either a breach of contract or unreasonable withholding of benefits. Interinsurance also moved to strike requests for punitive damages and attorney fees. The court sustained the demurrer without leave to amend and granted the motion to strike. The court entered an order of dismissal in June 2005. Rappaport-Scott has filed a timely appeal.

## CONTENTIONS

Rappaport-Scott contends an insurer has a duty to act in good faith in the interests of its insured in considering a potential settlement and can be held liable in tort for breach of the implied covenant of good faith and fair dealing if it rejects a reasonable offer by the insured to settle a claim for policy benefits and the rejection is unwarranted, or if it fails to engage in meaningful discussions with the insured to settle the claim. She contends the significant difference between the amount awarded in arbitration and the $7,000 previously offered by Interinsurance shows that Interinsurance failed to act in good faith in attempting to negotiate a settlement with her. She also contends the ruling on the motion to strike was error.

## DISCUSSION

### 1. Standard of Review

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106

Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*)

> 2. *Applicable Law Governing an Insurer's Liability for Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ The covenant of good faith and fair dealing implied in every insurance policy obligates the insurer, among other things, to accept a reasonable offer to settle a lawsuit by a third party against the insured within policy limits whenever there is a substantial likelihood of a recovery in excess of those limits. (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 401 [97 Cal.Rptr.2d 151, 2 P.3d 1]; *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658–659 [328 P.2d 198].) The insurer must evaluate the reasonableness of an offer to settle a lawsuit against the insured by considering the probable liability of the insured and the amount of that liability, without regard to any coverage defenses. (*Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 16 [123 Cal.Rptr. 288, 538 P.2d 744].) An insurer that fails to accept a reasonable settlement offer within policy limits will be held liable in tort for the entire judgment against the insured, even if that amount exceeds the policy limits. (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 725 [117 Cal.Rptr.2d 318, 41 P.3d 128]; *Comunale, supra,* at p. 661.) An insurer's duty to accept a reasonable settlement offer in these circumstances "is implied in law to protect the insured from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose. [Citation.]" (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].)

Contrary to the argument advanced by Rappaport-Scott, it is well established that an insurer's tort liability for failure to accept a reasonable settlement offer can arise only with respect to third party, or liability, coverage. As explained in *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]: "[I]n *Comunale* and *Crisci* [*v. Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]] we made it clear that '[l]iability is imposed [on the insurer] not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' (*Crisci, supra,* at p. 430.) In those two cases, we considered the duty of the

insurer to act in good faith and fairly in handling *the claims of third persons* against the insured, described as a 'duty to accept reasonable settlements'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling *the claim of an insured*, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty." (*Id.* at p. 573, italics added; see also *Austero v. National Cas. Co.* (1978) 84 Cal.App.3d 1, 26–32 [148 Cal.Rptr. 653] [distinguishing an insurer's obligations under the implied covenant in third party and first party cases], disapproved on another point in *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 824, fn. 7 [169 Cal.Rptr. 691, 620 P.2d 141].) Clearly, the rules for determining an insurer's liability under the implied covenant based on the failure to pay a first party claim differ from the rules for determining the obligations of a liability insurer based on the rejection of a reasonable settlement offer by a third party.

■ An insurer's obligations under the implied covenant of good faith and fair dealing with respect to first party coverage include a duty not to unreasonably withhold benefits due under the policy. (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 575.) An insurer that unreasonably delays, or fails to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant. (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 346–347 [108 Cal.Rptr.2d 776].) The withholding of benefits due under the policy may constitute a breach of contract even if the conduct was reasonable, but liability in tort arises only if the conduct was unreasonable, that is, without proper cause. (*Ibid.*) In a first party case, as we have here, the withholding of benefits due under the policy is not unreasonable if there was a genuine dispute between the insurer and the insured as to coverage or the amount of payment due. (*Id.* at pp. 347–348.)

### 3. *The Complaint Fails to Allege Facts Sufficient to Constitute a Breach of the Implied Covenant of Good Faith and Fair Dealing*

Rappaport-Scott alleges in the second amended complaint that Interinsurance failed to negotiate with her in good faith to resolve her first party claim. She argues on appeal that her demand for $75,000 in policy benefits was a "reasonable settlement offer" and invokes the rule that an insurer's failure to accept a reasonable settlement offer within policy limits can support tort liability for breach of the implied covenant of good faith and fair dealing. We conclude that the particular rule of law that she invokes concerns only a liability insurer's obligation with respect to an offer to settle an action brought by a third party against the insured, and does not govern a first party insurer's

obligation with respect to payment of a claim by the insured, as we have explained. Because the underinsured motorist claim ·by Rappaport-Scott was for first party coverage, the facts alleged in the complaint cannot establish a breach of the implied covenant based on the failure to accept a reasonable settlement offer.

*In re Bongfeldt* (1971) 22 Cal.App.3d 465 [99 Cal.Rptr. 428], relied upon by Rappaport-Scott, is distinguishable. That opinion involved a petition for a writ of habeus corpus after the superior court found an insurance company claims evaluator in contempt and incarcerated him for failure to comply with an order to answer questions at his deposition. The questions concerned his evaluation of a claim for benefits for damages caused by an uninsured motorist. (*Id.* at pp. 467–468.) The deposition was taken in an action by the insured against the insurer in which the insured alleged that the insurer had acted in bad faith pursuant to a practice of refusing to pay the policy limit on uninsured motorist claims despite their validity, instead insisting on arbitration. (*Id.* at p. 468.) The Court of Appeal concluded that the questions concerning the insurer's evaluation of the claim were relevant to the issues in the action and that the deponent's failure to answer was a clear violation of the superior court's order. (*Id.* at p. 475.)

In describing the issues in the action, the *Bongfeldt* court discussed an insurer's liability for breach of the implied covenant of good faith and fair dealing arising from the rejection of a reasonable settlement offer: "*Comunale v. Traders & General Ins. Co., supra,* 50 Cal.2d 654, 658–659 [328 P.2d 198], makes it clear that liability based on an implied covenant exists whenever the insurer refuses to settle in an appropriate case and that liability may exist when the insurer unwarrantedly refuses an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement. Liability is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing." (*In re Bongfeldt, supra,* 22 Cal.App.3d at p. 469.) Contrary to *Bongfeldt,* we believe that an insurer's tort liability for failure to accept a reasonable settlement under the rule from *Comunale* can arise only with respect to third party coverage, as we have stated. In our view, the issue in *Bongfeldt,* properly stated, was not whether the insurer had refused a reasonable settlement offer, but whether the insurer had acted reasonably regarding the payment of first party benefits due under the policy.

Rappaport-Scott also alleges in the second amended complaint that Interinsurance offered her only $7,000 on her claim, that the arbitrator later

determined that $33,000 was payable, and that Interinsurance's conduct "was unreasonable and . . . in bad faith" and was intended to cause her to accept less than the amount she was entitled to receive. Although many of her allegations are clothed in the language of an inapplicable rule of law concerning settlement offers in the context of third party coverage, as we have discussed, the facts alleged in the complaint also suggest a cause of action based on an unreasonable delay in paying benefits due under the policy. The facts alleged in the complaint, however, also clearly demonstrate that a genuine dispute existed as to the amount payable on the claim.

The complaint alleges that in the arbitration, Rappaport-Scott claimed $346,732.34 in losses and sought policy benefits in the amount of the $100,000 policy limit reduced only by the $25,000 that she had already received in settlement from the underinsured driver. Interinsurance offered to pay only $7,000 on the claim. The arbitrator determined that her total loss was $63,000 and reduced that amount by the $25,000 settlement and by $10,000 for medical expenses benefits previously paid. The parties later corrected the latter figure to $5,000, resulting in a total award of $33,000. Despite the difference between the $7,000 offered by Interinsurance and the $33,000 later determined to be payable on the policy, the vast difference between the $346,732.34 in losses claimed by Rappaport-Scott and the $63,000 in actual losses as determined by the arbitrator demonstrates, *as a matter of law*, that a genuine dispute existed as to the amount payable on the claim. Moreover, Rappaport-Scott does not allege or assert any facts that would overcome the necessary inference from the facts she does allege that a genuine dispute existed, and therefore cannot.

Accordingly, even if Rappaport-Scott's complaint could be construed as alleging an unreasonable delay in the payment of benefits, we conclude that the facts alleged in the complaint demonstrate beyond argument that a genuine dispute existed as to the amount payable on her claim. Thus, Rappaport-Scott has failed to allege facts sufficient to state a cause of action for breach of the implied covenant based on an unreasonable delay in the payment of policy benefits. In light of our conclusion that the complaint fails to allege facts sufficient to state a cause of action, the ruling on the motion to strike is moot.

## DISPOSITION

The judgment is affirmed. Interinsurance is entitled to recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.