Filed 2/28/24  Alcaraz v. Steadfast Ins. Co. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| HECTOR ALCARAZ, | B324365 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV39169) |
| v. | |
| STEADFAST INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William Fahey, Judge.  Reversed and remanded with directions.

Downtown L.A. Law Group, Igor Fradkin, Daniel Ezizi; Joseph Socher for Plaintiff and Appellant.

Cozen O'Connor, Maria Cousineau and Angel Marti for Defendant and Respondent.

Plaintiff and appellant Hector Alcaraz was injured in a car accident with an underinsured driver. He presented a claim to his insurer, defendant and respondent Steadfast Insurance Company (Steadfast). After unsuccessful attempts to settle, Alcaraz demanded arbitration. The arbitrator awarded Alcaraz $532,220. Steadfast paid the arbitration award in full.

Alcaraz then filed the underlying action alleging Steadfast breached the implied covenant of good faith and fair dealing by unreasonably withholding policy benefits. He appeals from a judgment of dismissal entered after the trial court sustained Steadfast's demurrer without leave to amend. Alcaraz contends the trial court erred in accepting Steadfast's arguments, including that the complaint failed to state a claim because there was a genuine dispute regarding the amount owed on the claim. We agree that the complaint was sufficient to withstand the demurrer. Accordingly, we reverse the judgment of dismissal.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In October 2021, Alcaraz filed the underlying complaint against Steadfast alleging two causes of action: breach of contract

---

[1]  We draw our facts from the allegations in Alcaraz's complaint. Consistent with the standard of review, we assume the truth of the properly pleaded factual allegations and do not assume the truth of contentions, deductions, or conclusions of law. (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 532 (*Discovery Radiology Physicians*).)

and breach of the covenant of good faith and fair dealing.[2]

Alcaraz's insurance policy with Steadfast provided up to $1 million in coverage for bodily injury due to a collision with an underinsured driver. This policy was in effect in August 2017 when an underinsured driver failed to stop at a stop sign and collided with Alcaraz's vehicle. As a result of the accident, Alcaraz suffered a "left shoulder curved acromion, mild supraspinatus tendinosis and disc protrusions in the cervical spine." To treat his injuries, he required neck injections, anterior cervical discectomy surgery, and disk replacement surgery. In January 2019, Alcaraz settled with the underinsured driver's insurance company for the third party policy limit of $15,000.

In March 2019, Alcaraz submitted an underinsured motorist demand to Steadfast for his remaining policy limit amount of $985,000. The demand had an expiration date of April 15, 2019, but Steadfast did not respond until May 1, 2019, when it counteroffered with $7,000. Alcaraz immediately rejected Steadfast's offer and again demanded $985,000, with a response due May 6, 2019. This demand "again did not elicit any response from [Steadfast]." The complaint alleges that "on or about May 31, 2019, after [Steadfast] made an unreasonably low and unjustifiable settlement offer," Alcaraz demanded arbitration.

On July 2, 2019, Alcaraz again demanded the $985,000 policy limit, with a deadline of July 26, 2019. Steadfast responded on August 9, 2019, with an offer of $151,000. Alcaraz rejected the offer and, on January 20, 2020, sent another policy limit demand with a deadline of February 7, 2020.

---

[2]    Alcaraz does not challenge the trial court's ruling on his breach of contract claim.

In May 2020, Steadfast made a Code of Civil Procedure section 998 (section 998) offer to settle for $403,000. Alcaraz rejected the offer. On December 1, 2020, Steadfast lowered its offer to $250,000. Alcaraz responded on December 2, 2020, with a section 998 offer of $549,000, inclusive of his costs. The parties did not settle and proceeded to arbitration.

Following a hearing, the arbitrator issued an award in favor of Alcaraz for $547,200. Once the $15,000 third party settlement was credited, the total award due from Steadfast was $532,200, not including Alcaraz's costs. With costs, the amount Steadfast owed exceeded Alcaraz's section 998 offer.

According to the complaint, at all relevant times, Alcaraz provided Steadfast information sufficient to establish that (1) the underinsured driver was 100 percent at fault for causing the accident; (2) Alcaraz's injuries were serious and permanent; (3) his medical expenses already exceeded $285,000, and he would require further treatment; and (4) he had a claim for past and future pain and suffering. Steadfast also had information regarding Alcaraz's specific injuries and the medical treatment he required.

The complaint alleges Steadfast breached the implied covenant of good faith and fair dealing by failing to make a "prompt, careful, and reasonable assessment of his injuries and damages" caused by the accident; disregarding the evidence in support of Alcaraz's claim; making unreasonably low settlement offers; failing to promptly respond to his settlement offers; and engaging in "delay tactics" by not responding to Alcaraz's calls and correspondence. The complaint further asserts Steadfast was obligated to "obtain medical records, reports and bills to fairly evaluate the nature and extent of Mr. Alcaraz's injuries,"

4

and to have Alcaraz "objectively examined by a doctor of [Steadfast's] choice, if necessary, to assist it in making a good faith, objective, and fair determination of the nature and extent of his accident-related injuries and damages . . . ."

In July 2022, Steadfast demurred to Alcaraz's complaint. It asserted Alcaraz could not state a cause of action for breach of the implied covenant of good faith and fair dealing because it paid the arbitration award in full and was permitted to arbitrate under the Insurance Code. Steadfast further argued Alcaraz's claim failed because there was a genuine dispute regarding the policy benefits owed. The trial court sustained Steadfast's demurrer without leave to amend and issued a judgment of dismissal. Alcaraz timely appealed.

## DISCUSSION

On appeal, Alcaraz argues he sufficiently alleged a cause of action for breach of the implied covenant of good faith and fair dealing. Steadfast counters there was a genuine dispute between the parties as to the value of the underinsured motorist claim, thus Alcaraz's bad faith claim fails as a matter of law. Steadfast also contends Alcaraz did not state a valid claim because it paid the arbitration award in full; Alcaraz did not claim breach of any specific contract provision; submitting to arbitration cannot be bad faith; and Alcaraz failed to adequately allege causation because only his unreasonable demands rendered the arbitration necessary. We agree with Alcaraz that the complaint states a valid cause of action.

## I.    Standard of Review

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint

5

states a cause of action as a matter of law. [Citation.] First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. Next, we treat the demurrer as admitting all material facts properly pleaded. Then we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law. [Citation.]" ' " (*Discovery Radiology Physicians*, *supra*, 94 Cal.App.5th at p. 532.)

## II. The Complaint Sufficiently Alleges Breach of the Implied Covenant of Good Faith and Fair Dealing

### A. Applicable legal principles

" 'The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. "The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests." ' " (*Maslo v. Ameriprise Auto & Home Ins.* (2014) 227 Cal.App.4th 626, 633 (*Maslo*), quoting *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*).)

"An insurer that unreasonably delays, or fails to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant. [Citation.] The withholding of benefits due under the policy may constitute a breach of contract even if the conduct was reasonable, but liability in tort arises only if the conduct was unreasonable, that is, without proper cause." (*Rappaport-Scott v. Interinsurance Exchange of the Automobile Club* (2007) 146 Cal.App.4th 831, 837 (*Rappaport-Scott*).) "[T]he

6

reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events . . . ." (*Chateau Chamberay Homeowners Assn v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 347.)

In addition, "[w]hile an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.' [Citation.] To protect its insured's contractual interest in security and peace of mind, 'it is essential that an insurer fully inquire into possible bases that might support the insured's claim' before denying it. [Citation.] By the same token, denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable. 'A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim.' [Citations.]" (*Wilson, supra*, 42 Cal.4th at pp. 720–721.)

"An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions." (*Wilson, supra*, 42 Cal.4th at p. 723.)

**B.     The complaint sufficiently pleads bad faith**

The complaint's allegations that Steadfast unreasonably failed to investigate his insurance claim, and unreasonably delayed payment of policy benefits, are sufficient to state a cause of action.

According to the complaint, at all relevant times Steadfast knew: Alcaraz was in an accident with an underinsured driver

7

who was 100 percent at fault; because of the accident, Alcaraz suffered injuries requiring injections and surgery; Alcaraz incurred more than $285,000 in medical expenses; and Alcaraz would require further treatment.

The complaint further alleges that Steadfast ignored this information and failed to conduct any investigation necessary to make a reasonable assessment of his claim. Taking the complaint's allegations as true, Steadfast made its initial $7,000 settlement offer without first obtaining Alcaraz's medical records or otherwise attempting to evaluate the nature of Alcaraz's injuries. As a result, the $7,000 offer lacked a factual basis and was substantially less than Alcaraz's already incurred medical expenses of $285,000. These allegations would support a finding that Steadfast unreasonably failed to conduct a "prompt, careful, and reasonable assessment of [Alcaraz's] injuries and damages" as alleged in the complaint. "[D]enial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable." (*Wilson*, *supra*, 42 Cal.4th at p. 721; *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1239–1240 (*Brehm*).) Where, as is alleged here, an insurer ignores medical evidence in its possession and reaches its decision about the amount owed without contacting the insured's doctors, having its medical expert review the evidence, or arranging for the insured to be evaluated by an objective physician, an insurer's delay in paying a claim may be unreasonable. (*Wilson*, at p. 721.)

Likewise, the complaint also alleges Steadfast engaged in other conduct that unreasonably delayed the payment of benefits. According to the complaint, Steadfast did not respond to Alcaraz's calls and correspondence, thus failing to engage in settlement

8

discussions in good faith. It did not make a settlement offer sufficient to cover Alcaraz's already-incurred medical expenses until a year after Alcaraz demanded arbitration and 14 months after he made his initial claim. (*Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 837 [insurer must not "unreasonably" delay payment]; *Wilson*, *supra*, 42 Cal.4th at pp. 718–720 [two-year delay from demand letter with documentation to payment of full policy limit could be found unreasonable by jury].)

The allegations of Steadfast's inadequate investigation, its disregard of evidence regarding Alcaraz's injuries and already-incurred medical expenses, its settlement offers that were unreasonably low in light of the information available to it, and the related delay in payment of policy benefits, were sufficient to state a cause of action for breach of the implied covenant of good faith and fair dealing.

### C. Genuine dispute

We reject Steadfast's assertion that Alcaraz's claim fails as a matter of law because the complaint establishes a genuine dispute regarding the amount owed.

Under the genuine dispute rule, " 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.' [Citation.]" (*Wilson*, *supra*, 42 Cal.4th at p. 723.) However, "[t]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." (*Ibid*.)

9

As detailed above, the complaint alleges Steadfast failed to appropriately and timely investigate, process, and evaluate Alcaraz's claim, such that Steadfast's initial counteroffers were not made in good faith. These allegations prevent the conclusion that the genuine dispute rule forecloses Steadfast's bad faith liability as a matter of law.

Two cases are instructive. In *Rappaport-Scott*, a panel of this court concluded an arbitration award that is substantially lower than the insured's claimed damages may demonstrate the existence of a "genuine dispute." (*Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 839.) The insured in *Rappaport-Scott* asserted the insurer breached the implied covenant by making only low settlement offers that unreasonably failed to resolve her claim. (*Id*. at pp. 837, 839.) The court held "the vast difference between the $346,732.34 in losses claimed by Rappaport-Scott and the $63,000 in actual losses as determined by the arbitrator demonstrates, as a matter of law, that a genuine dispute existed as to the amount payable on the claim." (*Id*. at p. 839, italics omitted.)

In *Maslo*, the complaint's allegations led to a different result. In *Maslo*, there was also a substantial difference between the insured's demand and the arbitrator's eventual award. (*Maslo*, *supra*, 227 Cal.App.4th at p. 636.) However, the complaint alleged the insurer "failed to comply with its common law and statutory obligations to thoroughly and fairly investigate, process, and evaluate [the] appellant's claim." (*Ibid*.) The complaint asserted that although the insurer had information establishing that an uninsured motorist was solely at fault, as well as information documenting the nature and costs of medical treatment the appellant had received, it did not

10

interview the appellant's treating physicians or conduct its own investigation into his injuries.  The complaint further alleged the insurer did not respond in good faith to the appellant's settlement demand, did not provide a reason for withholding payment, refused an offer to participate in mediation, and made no settlement offer.  (*Ibid*.)

The *Maslo* court thus rejected the insurer's reliance on the genuine dispute rule, explaining "there can be no genuine dispute in the absence of a thorough and fair investigation."  (*Maslo, supra*, 227 Cal.App.4th at p. 637.)  The court further distinguished *Rappaport-Scott,* since the insurer in that case "fairly investigated, processed and evaluated the insured's claim," made a settlement offer, and participated in mediation prior to arbitration.  (*Ibid*.)

Here, as in *Maslo*, and unlike in *Rappaport-Scott*, the complaint alleges Steadfast did not conduct a thorough and fair investigation.  While in *Rappaport-Scott* the insured's bad faith claim appeared to be based exclusively on the insurer's alleged failure to make a reasonable settlement offer, here, as in *Maslo*, the complaint alleges Steadfast's failure to meaningfully investigate or fairly handle Alcaraz's claim demonstrated its bad faith.

*Maynard v. State Farm Mutual Automobile Insurance Company* (C.D.Cal. 2007) 499 F.Supp.2d 1154, is inapposite.  In *Maynard*, the federal district court granted summary judgment in the insurer's favor.  The insured did not attempt to refute the insurer's argument based on *Rappaport-Scott* that the difference between the damages claimed and the arbitrator's award was evidence of a genuine dispute that was fatal to the insured's bad faith claim.  (*Id*. at p. 1161.)  With the benefit of evidence

11

proffered in connection with the summary judgment motion, the court further concluded the insured could not dispute that there was a "reasonable and legitimate basis" for the insurer to question the insured's claim. (*Id.* at pp. 1165, 1162–1164.)

In contrast, we consider only whether Alcaraz's allegations were sufficient to state a cause of action. The complaint alleges Steadfast breached the implied covenant in ways other than failing to make a reasonable settlement offer. It further alleges Steadfast's settlement position was not maintained in good faith or on reasonable grounds. (*Wilson, supra*, 42 Cal.4th at p. 723.) At this preliminary stage of the proceedings, the genuine dispute rule does not defeat Alcaraz's bad faith claim as a matter of law.

## D. The complaint sufficiently alleges causation

Steadfast additionally argues the complaint fails to sufficiently allege its conduct caused Alcaraz's damages. It asserts arbitration was necessary because of Alcaraz's unreasonable demands for the full policy limit, and not because Steadfast made an unreasonable settlement offer or failed to adequately investigate the claim.

That Alcaraz may have made unreasonable settlement demands does not establish as a matter of law that Steadfast was not to blame for the delay in the payment of policy benefits. Steadfast's contention ignores the complaint's allegations, which, at this stage, must be accepted as true. An insufficient investigation, and therefore a baseless counteroffer or refusal to settle, may be the legal cause of damages in a bad faith action. (*Wilson, supra*, 42 Cal.4th at p. 721; *Brehm, supra*, 166 Cal.App.4th at pp. 1232, 1240.)

Further, the complaint alleges Steadfast made its counteroffer of $7,000 without a good faith basis. Even after

12

Alcaraz requested arbitration, it took Steadfast a year to offer a sum large enough to account for his past medical expenses alone. When Alcaraz made a section 998 offer that was only $2,000 more than the arbitrator's eventual award, Steadfast did not accept it or make a counteroffer even approaching that amount. The complaint alleges that Steadfast engaged in a pattern of unreasonable conduct and did not participate in meaningful settlement discussions. It does not allege that Alcaraz would not have accepted anything less than the policy limit. Instead, the complaint alleges that "at all relevant times, [Alcaraz] was amenable to, and expressly indicated a willingness to reach an amicable settlement of his underinsured motorist claim[s] for an amount within the policy limits."

The *Maslo* court considered and rejected a similar causation argument. The insurance company argued that its failure to investigate the claim could not be the legal cause of the insured's damages because the complaint did not allege the insured would have settled for less than his initial, high demand, thus "arbitration was inevitable." (*Maslo*, *supra*, 227 Cal.App.4th at p. 639.) The *Maslo* court reasoned it was not the insured's initial demand that made arbitration inevitable, rather it was the insurance company's refusal to investigate the claim and that it offered nothing. (*Ibid*.) We find this reasoning persuasive. While Steadfast made several settlement offers, the complaint adequately alleges they were unreasonably low because Steadfast made them without conducting any investigation, it already knew Alcaraz had incurred over $285,000 in medical expenses, and it also had information indicating the other driver was at fault. The complaint sufficiently alleges causation.

13

**E.     Neither Steadfast's payment of the arbitration award nor Alcaraz's failure to allege breach of a specific contract provision precludes his claim**

Finally, we reject Steadfast's arguments that its prompt payment of the arbitration award eliminated any potential liability for bad faith and that Alcaraz was required to plead that Steadfast breached a specific contractual provision to state a cause of action for breach of the implied covenant.

It is well established that an insured may maintain a cause of action for breach of the covenant of good faith and fair dealing even when the insurer has paid all benefits due under the policy. (*Wilson*, *supra*, 42 Cal.4th at pp. 720–721 [bad faith action based on delay in payment and insufficient evaluation of claim after insurer ultimately paid full policy limit]; *Maslo*, *supra*, 227 Cal.App.4th at pp. 634, 638 [bad faith action after insurer paid arbitration award]; *Brehm*, *supra*, 166 Cal.App.4th at pp. 1232, 1241–1242 [same]; *Hightower v. Farmers Ins. Exchange* (1995) 38 Cal.App.4th 853, 857, 861–862 (*Hightower*) [same].)

Steadfast fails to recognize this precedent and asserts that because it promptly paid the arbitration award, it never withheld benefits, so it cannot have acted in bad faith. For this proposition, it vaguely cites "the policy" and Insurance Code sections "11580.2" and "11580.26."[3]

---

[3]     Steadfast appears to implicitly rely on Insurance Code section 11580.2, subdivision (f), which provides that "[t]he policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement . . . ." It also appears that Steadfast relies on Insurance Code section 11580.26, subdivision (b), which

As we understand its argument, Steadfast contends these provisions establish it cannot be held liable for bad faith because it was not required to pay Alcaraz any policy benefits until either the parties agreed as to the amount owed, or the arbitrator issued an award.  Yet, this argument ignores the insurer's duty to act in good faith in responding to its insured's claim *before* it ultimately pays a claim.  (See, e.g., *Wilson*, *supra*, 42 Cal.4th at pp. 720–721, 723; *Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 837.)

Moreover, several courts have rejected Steadfast's argument that an insurer's right to arbitrate extinguishes its duty to respond in good faith to the insured's claim.  (*Maslo*, *supra*, 227 Cal.App.4th at pp. 638–639; *Brehm*, *supra*, 166 Cal.App.4th at p. 1244; *Hightower*, *supra*, 38 Cal.App.4th at pp. 862–863 [Insurance Code section 11580.26].)  For example, in *Brehm*, the court held that the insurer's contractual right to arbitrate did not relieve it from its duty to interact with its insured in good faith.  The court reasoned there was an "implied obligation to honestly assess Brehm's claim and to make a reasonable effort to resolve any dispute with him as to the amount of his damages before invoking that right [to arbitration]." (*Brehm*, at p. 1242.)  The court also held that Insurance Code section 11580.26, subdivision (b), which states that no cause of action can be brought against either the insurer or insured for demanding arbitration, did not "immunize" the insurer from tort liability for its handling of a claim.  (*Id*. at p. 1243.)  Citing *Hightower*, the court held that an insurer could

states: "No cause of action shall exist against either an insured or insurer from exercising the right to request arbitration of a claim under this section or Section 11580.2."

15

not use its right to pursue arbitration as a means to " ' "stonewall" ' " or " 'shield . . . dilatory conduct.' " (*Id*. at p. 1244, citing *Hightower*, at p. 863.)  We find the *Brehm* court's reasoning equally applicable here.

Steadfast also summarily asserts, without citation to any legal authority or explanation, that the complaint fails to state a claim because Alcaraz does not allege it breached a specific contract term.  This contention lacks merit.  The covenant of good faith and fair dealing is implied in every insurance contract. (*Maslo*, *supra*, 227 Cal.App.4th at p. 633.)  Thus, the breach of an express contract term is not required to maintain an action for breach of the *implied* covenant of good faith and fair dealing. (*Brehm*, *supra*, 166 Cal.App.4th at pp. 1235–1236.)

**DISPOSITION**

The judgment of dismissal is reversed. The case is remanded with directions to the trial court to vacate its order sustaining the demurrer in its entirety and to enter a new order overruling the demurrer to the breach of the covenant of good faith and fair dealing cause of action. Alcaraz shall recover his appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

17